# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-00117-SCT

*MITCHELL E. SHEPPARD, JR.*

*v.*

*MISSISSIPPI STATE HIGHWAY PATROL, JIM INGRAM, DIRECTOR, LT. WAYNE PARKER, SUPERVISOR, DRIVER IMPROVEMENT BRANCH, MISSISSIPPI STATE HIGHWAY PATROL AND THE ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, MIKE MOORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/22/93 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | V. W. CARMODY, JR. |
| ATTORNEY FOR APPELLEES: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CIVIL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 5/15/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/5/97 |

### BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. This case compels us to construe our implied consent law under D.U.I. refusal. The issues presented are whether the defendant has the right to a trial *de novo* in a suspension hearing for D.U.I. refusal; whether proper procedures were used in suspending the appellant's drivers' license; and whether the "confusion doctrine" applies to D.U.I. refusals in this state. Aggrieved with the lower court's decision to impose the civil penalty for D.U.I. refusal, Mitchell E. Sheppard, Jr. appeals. For the reasons set forth below, we affirm.

### FACTS

¶2. About 4:00 p.m. on November 7, 1992, Officer Don Stringer (Stringer) was going east on Highway 80 in Brandon when he was notified by a fellow officer of a possible D.U.I. suspect heading

west on Highway 80 driving a black Ford pickup truck, extended cab, occupied by two white males and one white female. When Stringer saw the described vehicle, he turned around and followed it for approximately half a mile. Stringer testified the vehicle went through one traffic light and negotiated through three lanes of traffic. Subsequently, the vehicle hit the shoulder. Stringer then turned on his blue lights.

¶3. Upon seeing the blue lights, the vehicle pulled over and stopped. The individual driving the vehicle was Mitchell E. Sheppard, Jr., an 18-year-old high school student. As Stringer approached the vehicle, Sheppard got out.

¶4. Stringer testified that Sheppard walked to the rear of the truck and leaned against it. While at the rear of the vehicle, Stringer observed that Sheppard smelled of alcohol, had slurred speech and red eyes. Officer Stringer then read Sheppard his *Miranda* rights and asked him if he had been drinking. Sheppard responded by saying yes.

¶5. Stringer immediately proceeded to ask Sheppard if he would mind taking a field sobriety test. Sheppard said no, and Stringer went through a series of three field tests. Stringer testified that Sheppard's performance of these tests was unsatisfactory. Dissatisfied, Stringer requested that Sheppard take a Portable Breath Test (PBT). Sheppard refused the test. Stringer testified that Sheppard was then handcuffed, arrested for Common Law D.U.I. (Miss. Code Ann. § 63-11-30(1)(a) (Supp. 1992)) and transported to the Brandon Police Station.

¶6. According to Sheppard's testimony, upon refusing to take the PBT, he was read his *Miranda* rights, handcuffed, placed in the police car and informed that he was arrested for "refusing D.U.I." While at the station, Stringer read from the intoxilyzer checklist and requested that Sheppard blow into the intoxilyzer machine. Sheppard testified that he declined to do so because he thought he was already arrested for refusing to take the portable alcohol test, and had invoked his *Miranda* rights which had previously been explained to him.

¶7. Stringer testified that he read Sheppard his "rights to the intoxilyzer 5000." Sheppard refused to take the test, and he was subsequently charged with D.U.I. first offense and D.U.I. refusal. Sheppard testified that he continued to believe that he was already under arrest for refusal to take the portable alcohol test. Sheppard also testified that Stringer never explained to him that the intoxilyzer machine was a different machine, that he was supposed to take the test, or that his constitutional rights under *Miranda* did not apply.

¶8. Sheppard's license was taken as required by statute, and an affidavit for use as a temporary license was given to him. He was allowed to post bond and was released.

¶9. Thereafter, Sheppard received notification from the State that his license was suspended for 90 days for refusal to take the breath test. A petition was timely filed in the county court of Rankin County for a trial *de novo*. Due to the absence of the county court judge, this matter was transferred to the Circuit Court of Rankin County for hearing.

¶10. The circuit judge, after hearing a motion by Sheppard for a trial *de novo* and for the State to proceed first, required Sheppard to proceed with his case first, followed by the State. At the conclusion of the hearing, the court denied Sheppard's petition to return his license and ruled that

Sheppard refused to take the intoxilyzer. Thereafter, Sheppard filed a motion for reconsideration and/or for a new hearing, which motion was subsequently denied.

## LAW

### I.

**WHETHER THE LOWER COURT RULED PROPERLY WHEN IT REQUIRED SHEPPARD TO PROCEED FIRST IN A TRIAL *DE NOVO* ON THE SUSPENSION HEARING?**

¶11. Interpretations of statutes are matters of law. ***See Ervin v. State***, 431 So. 2d 130, 136 (Miss. 1983).

> The Courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous. To do so would be entrenching upon the power of the Legislature. Neither have the Courts authority to write into the statute something which the Legislature did not itself write therein . . .

***Weeks Dredging & Contracting, Inc. v. Mississippi State Tax Com'n***, 521 So. 2d 884, 856 (Miss. 1988) (quoting ***First National Bank of Memphis v. State Tax Commission***, 49 So. 2d 410, 412 (Miss. 1950)).

¶12. When issues tendered for review are of law and not of fact, this Court's review is *de novo*. ***Omnibank of Mantee v. United Southern Bank***, 607 So. 2d 76, 83 (Miss. 1992).

¶13. In the lower court, Sheppard asserted that the State should present its case first, thereby carrying the burden of going forth and proving its case for suspension of Sheppard's license. Specifically, Sheppard argued that the case must be conducted as a trial *de novo* as mandated by § 63-11-25 Miss. Code Ann. (1972). Sheppard further argued that this case is quasi-criminal and that it was violative of Sheppard's Fifth Amendment rights to have him proceed first.

¶14. The trial judge, however, decided that Sheppard's action was an appeal of an administrative suspension; that the petition was a civil action; and that the petitioner, Sheppard, should present his case first. The trial judge said, "You [Sheppard] are entitled to a true trial *de novo*, but I think it's still a civil case and I think you're the one that goes forward."

¶15. At that point Sheppard made no further objection as to the order of proof and proceeded with his case, calling Officer Don Stringer as his first witness.

¶16. Section 63-11-25 of the Mississippi Code (1972) is the pertinent statute in question. It reads as follows:

> If the forfeiture, suspension, or denial of issuance is sustained by the commissioner of public safety, or his duly authorized agent pursuant to subsection (1) of section 63-11-23, upon such hearing, the party aggrieved may file within ten (10) days after the rendition of such decision a petition in the circuit or county court of his residence for review of such decision and such hearing upon review **shall proceed as a trial de novo before the court**without a jury.

§ 63-11-25 Miss. Code Ann. (1972) (emphasis added).

¶17. It is clear from a plain reading of § 63-11-25 Miss. Code Ann. (1972) that a trial *de novo* is required and thus the State is compelled to put on its case first. "The right to a new trial is absolute. A defendant need not allege error in the inferior court proceeding." ***Fisher v. City of Eupora***, 587 So. 2d 878, 885 (Miss. 1991) (citing ***Colten v. Kentucky***, 407 U.S. 104 (1972)). The "prosecution and defense begin anew. . . . The case is to be regarded exactly as if it had been brought there in the first instance." *Id.* Therefore, the lower court erred and Sheppard should not have been required to proceed first, nor should he have been the party who carried the burden of persuasion.

¶18. The true question is whether this error is reversible. We consider Sheppard's challenge in the same context as a challenge against the sufficiency of the evidence. This error does not require reversal because no dispute exists regarding the facts. We have not always found that a misperception regarding the burden of proof requires reversal. Where, as here, the facts are clear and undisputable, we will not reverse the judgment based upon a misallocation of the burden. ***Mississippi Employment Security Commission v. Gaines***, 580 So. 2d 1230 ( Miss. 1991) (misallocation of burden of proof not grounds for reversal and remand where there is no significant dispute and facts dictate single result). Thus, while Sheppard was correct that the burden rested with the State, the error is of no moment.

## II.

### WHETHER THE EVIDENCE SHOWED IMPROPER PROCEDURES WERE FOLLOWED IN SUSPENDING SHEPPARD'S DRIVER LICENSE AS REQUIRED BY STATUTE?

¶19. Sheppard contends the evidence at the suspension hearing showed that improper procedures were followed in suspending his driver's license. The charging officer's sworn statement revealed that the officer arrested Sheppard prior to the request that he submit to an official breath test in direct contradiction of precedent and statutory requirements.

¶20. A simple review of the ticket reveals that the arrest time was 16:22, and the test time was 16:57. Sheppard argues that the arrest prior to his refusal to submit to the official breath test should not pass muster under review as required by § 63-11-23 Miss. Code Ann. (1972). Specifically, he argues that it fails to meet the finding "(b) that the person was placed under arrest *after* refusal to take the test." § 63-11-23 Miss. Code Ann. (1972) (emphasis added).

¶21. There is never an arrest for refusal because there is no criminal offense of refusal. Refusal only results in a civil penalty of forfeiture of one's license fro ninety days and enhanced punishment if one is convicted of D.U.I. Miss. Code Ann. § § 63-11-21, -23, -30. It follows that the arrest referred to in the statute does not refer to an arrest for refusal but an arrest for D.U.I. based upon probable cause other than a failed field test. Miss. Code Ann. § 63-11-5. (Probable cause required before officer may request the test.) As a practical matter a driver has been stopped and usually brought to the jail, or other testing has occurred, before he is asked to submit to a sobriety test. Probable cause to believe that the person is impaired by a substance is required before the test may be requested. It follows that there is probable cause to arrest the person at that time.

¶22. The requirement that a person be arrested is a check on the statutory probable cause requirement for the administration of the chemical test. As a matter of statutory interpretation the word "after" is surplusage in the statute. We must read statutes sensibly "even if it means correcting the statute's literal language." ***Ryals v. Pigott***, 580 So. 2d 1140, 1148 n.15 (Miss. 1990), *cert. denied*, ***O'Quinn v. Ryals***, 502 U.S. 940 (1991); ***Gandy v. Pub. Serv. Corp. of Miss.***, 163 Miss. 187, 197, 140 So. 687, 689 (1932). The requirement that arrest occur only after a refusal to take a chemical test is unworkable and inconsistent with the intent of the statute. We thus find no merit with this issue.

## III.

### WHETHER SHEPPARD REFUSED TO SUBMIT TO THE OFFICIAL BREATH TEST OFFERED BY THE ARRESTING OFFICER?

¶23. Whether an individual who is stopped for driving under the influence, read his *Miranda* rights, and subsequently asked to submit to chemical testing can effectively refuse testing under the implied consent statute based on his confusion (the "confusion doctrine") as to the applicability of his *Miranda* rights to the chemical testing procedures is one of first impression before this Court. "In a case of first impression Mississippi Courts look to other jurisdictions in determining the matter." ***Glover v. Daniels***, 310 F. Supp. 750, 753 (N.D. Miss. 1970) (citing ***Olin Mathieson Chem. Corp. v. Gibson's Pharmacy of Vicksburg, Inc.***, 169 So. 2d 779 (Miss. 1964)).

¶24. Sheppard argues the "confusion doctrine" has been addressed in a number of states. ***See Graham v. State***, 633 P.2d 211 (Alaska 1981); ***Jamail v. State***, 731 S.W.2d 708 (Tex. Ct. App. 1987), *aff'd*, 787 S.W.2d 380 (Tex. Crim. App.), *cert. denied*, 498 U.S. 853 (1990); ***Commonwealth Dept. of Transp. v. O'Connell***, 555 A.2d 873 (Pa. 1989); ***Ehrlich v. Backes***, 477 N.W.2d 211 (N.D. 1991). Under the confusion doctrine, "it is improper to suspend a person's driver's license under the implied-consent law for refusing to submit to an alcohol test if the refusal stems from the person's misunderstanding that the *Miranda* rights are applicable to the request for the alcohol test." ***People v. Mucha***, 488 N.E.2d 1385, 1388 (Ill. App. 2 Dist. 1986).

¶25. Our first decision is whether the "confusion doctrine" is part of our implied consent law. Not all states have embraced this concept. *Id.* at 1388. Instead, other courts have held that as long as the defendant was advised that refusal would result in driver's license suspension, confusion resulting from the *Miranda* warning was not a defense. *Id.* at 1389.

¶26. In ***Mucha***, the Illinois Supreme Court reasoned that: "[Our] law simply requires the State to prove that the defendant "refused to submit" to the test, not that the refusal was made with full knowledge of the defendant's rights and the possible consequences." *Id.* at 1389. In turning to our statute, we find no requirement that such a refusal be made with full knowledge of the defendant's rights and consequences. Rather our statute § 63-11-25 Miss. Code Ann. (1972) provides the following:

> If upon such review the Commissioner of Public Safety, or his authorized agent finds (a) that the law enforcement officer had reasonable grounds and probable cause to believe the person had been driving a motor vehicle upon the public highways . . . while under the influence of

intoxicating liquor; (b) that the person was placed under arrest after a refusal to take the test; **(c) that he refused to submit to the test upon request of the officer; and (d) that the person was informed that his license to drive would be suspended or denied if he refused to submit to the test**, then the Commissioner of Public Safety . . . shall give notice to the licensee that his license or permit to drive . . . shall be suspended . . . .

§ 63-11-25 Miss. Code Ann. (1972) (emphasis added). Noticeably lacking is any mention in this statute of a knowing refusal.

¶27. Turning to the testimony, the record shows that Officer Stringer had reasonable grounds and probable cause to give Sheppard the intoxilyzer test. Stringer informed Sheppard of his right to refuse the test and that if he refused the test, his license would be suspended for ninety (90) days. Sheppard failed to take the test after Stringer requested he do so. Thus, we conclude that Sheppard refused the test under the implied consent law and that any confusion resulting from the reading of *Miranda* was immaterial as to Sheppard's rights under the implied consent law. For the foregoing reasons, we affirm the lower court.

¶28. **AFFIRMED.**

**PRATHER, P.J., BANKS, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J. AND PITTMAN, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

### DAN LEE, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶29. I concur with the majority's opinion insofar as it recognizes that Sheppard refused to take the intoxilizer test under the implied consent law and that any confusion resulting from the reading of the Miranda warnings was immaterial as to Sheppard's rights under that law. I further agree with the majority's holding that "the lower court erred and Sheppard should not have been required to proceed first, nor have been the party who carried the burden of proving the administrative decision was so flawed as to constitute reversible error." However, I depart with the majority in their analysis and decision that the case at bar is not reversible. Accordingly, I concur in part and respectfully dissent in part.

¶30. Although the appeal of an administrative suspension of driving privileges is civil in nature, it has quasi criminal effects due to the penalties that are involved. This Court has held that they will "regard any statute for suspension or revocation of driving privileges as penal in nature and effect. Such statutes should be construed strictly though reasonably against infliction of the penalty." ***State v. Martin***, 495 So. 2d 501, 502 (Miss. 1986). This Court has also operated under the long-standing rule that "penal statutes are to be interpreted strictly against the state and construed liberally in favor of the accused." ***McLamb v. State***, 456 So. 2d 743, 745 (Miss. 1984).

¶31. As the majority notes, "[i]t is clear from the plain reading of § 63-11-25 Miss. Code Ann. (1972) that a trial de novo is required." Consequently, the burden of proving that the officer had reasonable grounds to request Sheppard to take the intoxilizer test, that Sheppard actually refused to take the test, and that proper administrative procedures were followed should have been on the State, and the State should have proceeded first. Requiring Sheppard to proceed first wrongfully transferred the burden of proof to the defendant and jeopardized his confrontation and Fifth Amendment rights.

¶32. Accordingly, I would reverse the decision of the lower court and remand for a proper *de novo* hearing.

### SULLIVAN, PRESIDING JUSTICE, DISSENTING:

¶33. I agree with the majority's finding regarding error number two that no error occurred in arresting Sheppard for common law DUI prior to his refusal to take the breathalyser. I also agree with the majority's decision under error number three not to adopt the confusion doctrine in Mississippi. However, I disagree with their conclusion regarding error number one. Therefore, I must respectfully dissent.

### I.

### WHETHER THE LOWER COURT RULED PROPERLY WHEN IT REQUIRED SHEPPARD TO PROCEED FIRST IN A TRIAL *DE NOVO* ON THE SUSPENSION HEARING?

¶34. I agree with the majority's determination that the lower court erred in requiring Sheppard to proceed first in the trial *de novo* suspension hearing and carry the burden of persuasion. However, I disagree with the majority's conclusion that the error was not reversible because Sheppard waived his right to have the sufficiency of the evidence reviewed at the close of the State's case by putting on evidence of his own. This assignment of error should not be considered as a review of the sufficiency of the evidence, but instead as a procedural review. The trial court erroneously required Sheppard to present his evidence first and carry the burden of proof. The State only offered evidence through cross-examination during Sheppard's case in chief. At the close of Sheppard's case, each side presented closing arguments, and the court ruled to deny Sheppard's petition for relief from the administrative license suspension. The State presented no case against Sheppard, so essentially Sheppard's petition was denied with no proof. It is disingenuous to compel Sheppard to proceed with his case first and then say that he waived his right to an appeal on the sufficiency of the evidence by proceeding with his case.

¶35. It is true that this Court has previously held that a defendant waives any objection to the denial of a motion for directed verdict by putting on his own evidence. *Weeks v. State*, 493 So.2d 1280, 1282 (Miss. 1986) (citing *Ruffin v. State*, 481 So.2d 312, 316 (Miss. 1985). However, we clarified this waiver rule in *Wetz v. State*, 503 So.2d 803, 807, n.3 (Miss. 1987), cited by the majority. In *Wetz*, this Court stated:

> *By offering evidence of his own, the defendant in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict*. What the waiver rule means is that the defendant must proceed on the basis of the evidence before the court at

the time the challenge is made and not in the limited state of the record which may have existed back when the motion for a directed verdict was originally made.

Put otherwise, all of these motions--the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or, finally, a motion for judgment of acquittal notwithstanding the verdict--are procedural vehicles for challenging the sufficiency of the case for the prosecution. Each requires that the court consider all of the evidence before it at the time the motion is considered. When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court.

*Id*. (emphasis added) (citations omitted). Even if we were to consider this issue as a review of the sufficiency of the evidence, Sheppard did not waive his right to such a review by putting on his own evidence. Under the process set out in *Wetz*, we would simply review the Circuit Court's ruling on Sheppard's last challenge to the sufficiency of the evidence at trial.

## CONCLUSION

¶36. The trial court erred in requiring Sheppard to proceed first and carry the burden of proof in a trial *de novo*. I cannot agree with the majority's conclusion that this error was harmless. Therefore, I must respectfully dissent. I would reverse the conviction of refusal to take breath test and reverse the suspension of driver's license and remand the case for a proper trial *de novo* suspension hearing.

**LEE, C.J., AND PITTMAN, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶37. I am compelled to dissent. The trial court's decision that Mitchell Sheppard was required to go forward rather than the State in a trial de novo constituted reversible error and impeded upon Sheppard's fundamental due process rights.

¶**38.** The defendant has the option, under Miss. Code Ann. § 63-11-25, to file a petition in the circuit court for review of a decision to suspend a license, which Sheppard chose in this matter. When review is granted, the resulting hearing shall proceed as a trial de novo, without a jury, as if it had been brought in that court in the first place. The majority correctly notes that the lower court erred when it required Sheppard to proceed first and carry the burden of proving reversible error.

¶39. However, the trial judge *did* commit reversible error when he shifted the burden of proof to the defendant in this case. Sheppard objected to the procedural aspect of who bears the burden in this matter, as the majority recognizes. Unfortunately, the defendant's fundamental due process rights were trampled upon as soon as the trial judge forced him to proceed ahead of the State. The defendant had no idea of what case the State would be making against him, an entirely untenable position for Sheppard. Had Sheppard not put on any evidence, the trial judge would have dismissed his entire appeal and sustained the State's suspension of his license.

¶40. The majority now says that the error committed by the trial court is not reversible, despite the misallocation of the burden, because no dispute exists regarding the facts. However, there is a clear

factual dispute as to the basis of Sheppard's arrests and what he understood after he refused to take the portable breath test, particularly concerning his being Mirandized and his right to remain silent. The State's position is that Sheppard refused to take the intoxilyzer test at the Brandon Police Station. Sheppard's position is that he was invoking his rights as explained to him when he refused to take the portable breath test. Sheppard further contends that he did not realize that the tests were not the same. Whether or not the circuit judge concluded that Sheppard refused the Breathalyzer, we cannot disregard Sheppard's due process right to having the State prove its allegations against him. This matter must be remanded for a trial de novo.

¶41. Additionally, the results of portable breath tests cannot be used as evidence in a defendant's subsequent trial because the tests are not scientifically reliable. The only tests which have been accepted as reliable are intoxilyzer tests and blood tests taken to determine the amount of alcohol present in the bloodstream. Therefore, Sheppard's refusal to take the portable breath test should not be used as evidence against him by the majority or on remand for trial de novo.

¶42. Further, Sheppard was arrested at the scene for "common law D.U.I." and then he refused the portable breath test. The majority admits that there is no crime of "D.U.I. refusal." Nevertheless, the ticketing officer arrested Sheppard for this refusal and Mirandized him. After Sheppard was taken to the police station, he was offered an intoxilyzer test, and Sheppard refused, pursuant to his Miranda rights. Then Sheppard was arrested again, this time for first offense D.U.I. Certainly, once Sheppard was initially Mirandized, he was not required to take any test, whether it be a portable field test or the intoxilyzer test that the police tried to administer at the station. However, the majority seems to ignore the arrest at the scene and the rights invoked by Sheppard pursuant to it. Instead, it seems to merge the first arrest into the arrest made of Sheppard when he refused to take the intoxilyzer test.

¶43. Additionally, the police charged Sheppard with "refusal to take a breath test," when in fact, Sheppard was arrested prior to the request to take the test. Miss. Code Ann. § 63-11-23 is clear--the person may be arrested only after he refuses to take the test. Here, the ticketing officer simply did not follow the dictates of the statute, and the State's attempt to suspend the license and prosecute Sheppard under Miss. Code Ann. § 63-11-30 must fail.

¶44. The Department of Public Safety did act arbitrarily or capriciously when it suspended Sheppard's license. In our criminal justice system, an accused is innocent until proven guilty. By requiring Sheppard to present his case first, the trial judge effectively removed all of the defendant's fundamental due process rights. Having statutes like Miss. Code Ann. § 63-11-25, which circumvent and contravene Section 31 of the Mississippi Constitution and allow the same agency that calibrates and administers alcohol tests to be the judge and jury for a D.U.I. refusal, is like letting the district attorney decide whether one is guilty of the crime charged by the same district attorney. The burden was taken from the State and unfairly placed squarely on Sheppard's shoulders, when in fact the State had proffered no evidence to substantiate its claim. To say that the trial judge's decision to switch the burden is not reversible error is to say that in any criminal case, the State never has to meet its burden of proof first.

¶45. It is for these reasons that I respectfully dissent.